# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

May 29, 1939

Honorable John E. Taylor, Chief Supervisor
Railroad Commission of Texas
Austin, Texas

Dear Mr. Taylor:

Opinion No. O-854
Re: Public Nature of certain reports
to the Railroad Commission.

On May 22, 1939, you asked this Department for an opinion with respect to the following reports required by the statutes and rules of the Railroad Commission of Texas: (1) Oil Producer's Monthly Reports, (2) Refiner's Operation Reports, (3) Gasoline Plant Operation Reports, (4) Carbon Black Plant Reports.

Your questions were as follows:

"1. Should the information contained in the report above referred to be made available to the public when requested?

"2. If it should be held that the information contained in any of the reports above referred to is of a public character, then will you please advise which of the reports fall within that class?"

We will answer both of your questions in one as all of the reports in our opinion fall within the same class. The above reports required to be filed with the Railroad Commission become a part of the archives of the Railroad Commission when filed (see Article 288, Revised Civil Statutes) and become public records. (See 60 A.L.R. 1351.) It is the opinion of this Department that the information contained in said reports should be made available to the public when requested at reasonable hours and when the request may be compliedwith without disturbing the orderly performan of the business of the Railroad Commission by the Commission and its employees.

Where there is no statute with respect to whether or not certain records of a governmental body or department should be



open to public inspection, then the question must be determined by the common law. In the case of Palacios, et al v. Corbett, et al, 172 S. W. 777, decided by the Court of Civil Appeals of San Antonio and in which a writ of error was refused by the Supreme Court, the common law as applied in Texas was expressed by the court which followed an opinion of the Supreme Court of Tennessee:

"There being no decisions of our own courts upon this matter, so far as we have been able to ascertain, we have had recourse to the decisions of the courts of other common-law states, and conclude that the opinion of the Supreme Court of Tennessee, in the case of State ex rel. Welford v. Williams, 110 Tenn. 549, 75 S. W. 948, 64 L. R. A. 435, constitutes the best statement of the rules of law which should be applied to this character of case. We quote from said opinion as follows:

"'In theory the right of examination is absolute, but in practice it is at last only a matter of discretion, because such application is likely at any time to be refused on the part of the custodian of the books and papers sought to be examined, and then the right must be forced by mandamus, and this writ is not of absolute right, but merely of discretion, to be awarded only in a proper case; the facts claimed as authorizing its issuance to be judged of in every case by the court, and the writ to be awarded or withheld upon a consideration of all the circumstances presented. So, while the right is, in theory, absolute, yet it is in practice so limited by the remedy necessary for its enforcement as that it can be denominated only a "qualified right." The right to an examination for a special purpose, as, for example, to obtain specific information to use in a litigation between the applicant and third parties, or between the applicant and the corporation, and the like cases, while not, in principle, standing upon higher grounds, yet is the more easily grantable, because it does not involve so much time, and so much inconvenience to the custodian of the books and papers, and so much interruption of business, as in case of a general examination. Yet it cannot be doubted, under a state of facts showing it to be important to the public interest that the general examination of the books of a municipality should be had, that the court should allow such examination at the suit of one who is a citizen and taxpayer of the corporation.



The right rests, not only on the ground that the books
are public books, but also on the same principle that
authorizes a taxpayer to enjoin the enforcement of
illegal contracts entered into by the municipality,
county, or state, for the protection of the applicant
and all other taxpayers from illegal burdens.  And it
is obvious that, in making and enforcing such applica-
tion, the taxpayer acts, in a very real sense, not only
for himself, but for all other taxpayers, and acts,
therefore, in the capacity, as it were, of a trustee
for all.  It must be admitted, also, that the exercise
of such power, if prudently and carefully guarded, cannot
be otherwise than salutary, because the knowledge that
it can be exercised by a citizen and taxpayer, and may
be exercised when the public good shall seem, on sound
reasons, to demand it, cannot result otherwise than in
producing an added sense of responsibility in those
who administer the affairs of municipal corporations,
and in inducing a greater carefulness in the discharge
of the trusts imposed upon them by their fellow citizens
under the sanctions of law.'"

On examination of the statutes of the State of Texas, we
are of the opinion that the common law as expressed in the above
case applies to the reports inquired about.  Article 6044 of the
Revised Civil Statutes of Texas, which article was originally
enacted in 1917, provides as follows:

"The Commission shall require of such common carrier
pipe lines duly verified monthly reports of the total
quantities of crude petroleum owned by such pipe lines
and of that held by them in storage for others, as also
of their unfilled storage capacity, but no publicity
shall be given by the Commission as to stock of crude
petroleum on hand of any particular pipe line; but the
Commission in its discretion may make public the aggre-
gate amounts held by all pipe lines making such reports,
and of their aggregate storage capacity."

Article 6044 does not seem to cover the reports mentioned
in your request, but we wish to point out Section 6 of Article
6049a of the Revised Civil Statutes of Texas, which is as amended
in 1931 and thus being a later act would control over Article 6044
wherein they seem to be in conflict:

"Sec. 6.   very common carrier of crude petroleum
within this State as defined by law and every public utility
as defined herein shall on or before the twentieth day of

253

each calendar month file with the Railroad Commission of Texas, and post in a conspicuous place, accessible to the general public, in each of its division offices, and in its principal office in this State, a statement, duly verified, containing the following information concerning its business during the preceding calendar month:

"1. How much petroleum, crude or refined, was in the actual and immediate custody of such carrier or public utility at the beginning and close of such month, and where same was located or held, including the location and designation of each tank or place of deposit, and the name of its owner.

"2. How much petroleum, crude or refined, was received by such carrier or public utility during such month.

"3. How much petroleum, crude or refined, was delivered by such carrier or public utility during such month.

"4. What quantity of such petroleum, crude or refined, is held by it for the account of itself or parent or affiliated organizations.

"5. The available empty storage owned or controlled by it and where located.

"6. The foregoing information shall be set out in each statement separately as to crude petroleum and each refined product thereof."

We also wish to call to your attention to the provisions of Article 6049c of the Revised Civil Statutes, and particularly the following quoted portion thereof: "The commission shall have the power to require all such persons to make and file with the commission sworn statements or reports as to facts within their knowledge or possession pertaining to the reasonable market demand for crude petroleum oil and to the production, storage, transportation, refining, reclaiming, treating, marketing or processing of crude petroleum oil or natural gas and products of either including those facts enumerated herein." The present statute is as amended



Hon. John E. Taylor, May 29, 1939, Page 5

by the legislature in 1935 by the 44th Legislature, p. 180, Ch. 76, Sec. 5, which amends Ch. 45, H. B. 99 of the 2nd Called Session of the 43rd Legislature, 1934, and struck from the 1934 amendment the following sentence: "The data, reports and information obtained and received hereunder shall not be available for any private use or public circulation but shall be available to any state governmental agency." Thus by striking this provision out by the 1935 amendment, the Legislature indicated that such reports should be open to public inspection.

We call your attention to the fact that the Legislature by such provisions as contained in Article 6013 of the Revised Civil Statutes and Article 6066a, Sec. 10b, must have contemplated that the various reports to be filed with the Railroad Commission would be open for public inspection. It is provided by Article 6013 that any citizen may file a petition to restrain waste of natural gas without any financial interest other than he possesses in common with all citizens of the State and under Article 6066a, Sec. 10b, it is made the Attorney General's duty to bring a suit for the confiscation of unlawful oil or unlawful products when advised of its presence from any source. We merely point these provisions of the statutes out in addition to the language used in the above quoted case, to show more clearly why our answer to your first question is in the affirmative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By D. D. Mahon Sr.

D. D. Mahon, Sr.
Assistant

DDM:N

APPROVED

Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION COMMITTEE
BY
CHAIRMAN